**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ALEXANDER J. HARWIN, SB# 225254
  E-Mail: Alexander.Harwin@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant, Amplity, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RUKIYA GORDON, an individual, | Case No. |
| Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §1441(B) [DIVERSITY OF CITIZENSHIP]** |
| vs. | |
| AMPLITY HEALTH, an unknown business entity, AMPLITY, INC., a corporation and DOES 1-10, DOES 11-20 and DOES 21-20, inclusive, | Trial Date:    None Set |
| Defendants. | |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Amplity, Inc. (hereafter as "Defendant") by and through its counsel, hereby removes the above-entitled action from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of California, based on diversity jurisdiction, and in furtherance of this removal asserts:

/ / /

# JURISDICTION AND VENUE ARE PROPER

1. This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) and is one which may be removed by Defendants pursuant to 28 U.S.C. § 1441. This is a civil action where Plaintiff appears more likely than not to claim an amount in controversy that exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1441(a) because it embraces the state court where the removed action has been pending.

# STATUS OF THE PLEADINGS

3. On October 31, 2023, Plaintiff Rukiya Gordon ("Plaintiff"), by and through her attorney, filed a civil action against Amplity, Inc. and Amplity Health [which is a dba of Amplity, Inc.] in the Superior Court of the State of California for the County of Los Angeles, entitled *Rukiya Gordon v. Amplity Health, et al.*, Case No. 23AVCV01245 ("Complaint"). (Harwin Declaration, Exhibit 1.)

4. In the Complaint, Plaintiff asserts the following causes of action: (1) Wrongful Termination (*Labor Code*, Sections 1102.5 and 98.6); (2) Wrongful Termination in Violation of Public Policy; (3) Retaliation for Asserting Legal Rights (*Labor Code*, Sections 1102.5 and 98.6); (4) Unfair Competition (*Business & Professions Code*, Sections 17200, et. seq.); (5) Discrimination Based on Religious Creed Or Faith – Wrongful Termination Re: Terms, Conditions, and Privileges of Employment FEHA; *Gov. Code*, Sections 12940(a); (6) Discrimination Based On Religious Creed Or Faith (Violation of Public Policy and *Gov. Code*, Sections 12920-12921, et. seq.); (7) Wrongful Termination in Violation of Public Policy, FEHA, *Gov. Code*, Sections 12940, et. seq.; (8) Retaliation for Asserting Rights with Regard to Religious Creed and Religious Beliefs (FEHA, *Gov. Code*, Sections 12940, et. seq.); (9) Failure to Provide Reasonable and Improper Accommodation (FEHA; *Gov. Code* 12940, et. seq.); (10) Failure to Engage in an Interactive Process (FEHA; *Gov. Code*, Sections 12940, et. seq.); (11) Religious Discrimination in

Violation of the California Constitution, Art. 1, Section 8; (12) Violation of *Labor Code*, Section 432.6; (13) Failure to Prevent Discrimination and Retaliation – (*Gov. Code*, Section 12940(k)); (14) Negligent Supervision and Training of Employees; (15) Prohibited and Discriminatory Non Job-Related Inquiry As Part Of Employment Interview – Discriminatory Hiring Practices (*Government Code*, Section 12940(d)); and (16) Discrimination Based Upon Opposing Forbidden Practices by Defendants (*Gov. Code*, Section 12940 (h)).  Exhibit 1.

5. On February 20, 2024, Plaintiff's counsel served defense counsel Harwin Notices of Acknowledgment of Receipt for Amplity, Inc. and Amplity Health, along with the Summons, Complaint, and associated documents.  (Harwin Decl., ¶ 2, Exhibit 1.)  On February 27, 2023, Mr. Harwin executed the Notice of Acknowledgment of Receipt for Amplity, Inc. and cause the pleading to be served.  (Harwin Decl., ¶ 4, Exhibit 2.)  As "Amplity Health" is a trade name and not an entity separate from Amplity, Inc., counsel solely executed Notice of Acknowledgment of Receipt for Amplity, Inc.  Id.

## THIS NOTICE OF REMOVAL IS TIMELY

6. This Notice of Removal is filed within 30 days of receiving a document that provides the basis for removal and is therefore timely under 28 United States Code Section 1446(b)(3).

7. Plaintiff's Complaint identified her residence by stating that "Plaintiff is, and at all relevant times herein was, an individual residing in the County of Los Angeles, State of California. At all relevant times herein, Plaintiff was employed by Defendants, and each of them, as a Pharmaceutical Sales Representative."  (Complaint ¶ 5.)

8. Accordingly, this Notice of Removal is filed within 30 days of service of the Complaint, in which Plaintiff identified her current residence to support Defendant Amplity, Inc.'s basis of removal based on diversity jurisdiction and is therefore timely under 28 United States Code Section 1446(b)(3).

**DIVERSITY JURISDICTION EXISTS**

9. For diversity purposes, a corporation is a citizen of the state in which it is incorporated and the state that constitutes its principal place of business. (28 U.S.C. § 1332(c)(1).) A corporation's principal place of business is the state in which its "high level officers direct, control and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). The Supreme Court has also held that the place of citizenship "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

10. Defendant Amplity, Inc. is, and at all times alleged in the Complaint was, a corporation formed and organized in the State of New Jersey with its headquarters and principal place of business at 2080 Cabot Blvd. West, Suite 100, Langhorne, Pennsylvania 19047. (Declaration of Eric Green ¶ 3.)

11. As Defendant Amplity, Inc.'s principal place of business is in Langhorne, Pennsylvania, and it is incorporated in New Jersey, Defendant is a citizen of Pennsylvania and New Jersey.

13. Because Plaintiff and Defendant are neither citizens nor residents of the same state, complete diversity between the parties exists.

**DOE DEFENDANTS**

14. For purposes of removal based on diversity of citizenship, the citizenship of defendants sued under fictitious names is disregarded. 28 U.S.C. § 1441(b)(1); see *Soliman v. Phillip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002). Doe Defendants designated 1 to 100 are fictitious, are not parties to this action, have not been served, and, thus, are of no consequence for purposes of this removal. See *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998).

**THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED**

15. Based on Plaintiff's allegations, the amount in controversy appears to exceed $75,000, exclusive of interest and costs. Removal is proper if, from the

allegations of the Complaint and the Notice of Removal, it is more likely than not that the claim exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 403-404 (9th Cir. 1996).

16. While Defendant denies any and all liability to Plaintiff, based on a conservative good faith estimate of the value of the alleged damages in this action, the amount in controversy in this case exceeds $75,000 exclusive of interest and costs. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F. 3d 373, 376-377 (9th Cir. 1997) (holding that where a complaint does not allege a specific dollar amount, the case is removable if the removing defendant shows by a preponderance of the evidence that the jurisdictional amount is present); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031-35 (ND. Cal. 2002) (holding that a plaintiff's damage claim, including lost wages, medical expenses, and emotional distress and attorneys' fees, was enough to put the amount in controversy above $75,000).

Additionally, when calculating the amount in controversy for purposes of jurisdiction, district courts often include "not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal." (*Celestino v. Renal Advantage Inc.*, 2007 WL 1223699, 2007 U.S. Dist. LEXIS 33827, at *4 (N.D. Cal. Apr. 24, 2007); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-415 (9th Cir. 2018) (concluding that "the amount in controversy is not limited to damages incurred prior to removal – for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious")

17. Although Plaintiff does not quantify her damages, she alleges that she has suffered and continues to suffer lost wages, future lost wages, earnings, other employee benefits, general damages, emotional distress, and prays for judgment for such damages including attorneys' fees and punitive damages. (Complaint, Exh. 1,

¶¶ 43, 44, 46, 54, 55, 57, 62, 65, 66, 68, 80, 81, 85, 86, 88, 93, 94, 96, 103, 104, 106, 112, 113, 115, 121, 123, 131, 136, 137, 139, 144, 145, 147, 153, 154, 156, 167, 168, 172, 173, 175, 179, 180, 182 and Prayer for Relief).

18. Economic Damages. In Plaintiff's Complaint, she alleges that "Plaintiff has endured" "loss of wages and benefits." (Complaint ¶¶ 33, 46, 52, 74 and Prayer for Relief ¶ 2). Accordingly, the Court can consider lost wages up until the date of a potential trial. "If a plaintiff claims at the time of removal that her termination caused her to lose future wages . . . then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Though no trial date has been set, courts have often found that one year from the date of removal is a "conservative estimate of the trial date" in employment cases. (See *Fisher v. HNTB Corp.*, 2018 WL 6323077, 2018 U.S. Dist. LEXIS 205323, at *13 (C.D. Cal. Dec. 3, 2018); *Beltran v. Procare Pharm.*, LLC, 2020 WL 748643, 2020 U.S. Dist. LEXIS 26098, at *7 (C.D. Cal. Feb. 14, 2020) (finding conservative one-year prospective trial date appropriate).)

19. Prevailing plaintiffs may be entitled to back pay, which is compensation in the amount they would have received but for the adverse action, less sums obtained through mitigation. *Parker v. Twentieth Century-Fox Film Corp,* 3 Cal.3d 176, 181 (1970). During her employment, Defendant Amplity, Inc. paid Plaintiff a bi-weekly rate of $2,884.63 ($1,442.315 per week) which annualizes to $75,000. (Green Decl. ¶ 4). Plaintiff was also eligible for and received bonus compensation based on her performance. From January 31, 2022 [when Plaintiff alleges Defendant Amplity, Inc. terminated her] through October 31, 2023, Plaintiff was off work for a minimum of 92 weeks and Plaintiff's backpay claims would equal $132,692.98 [92 weeks times $1,442.315] exclusive of bonus.

20. In addition, Plaintiff can seek future pay. Conservatively estimating a future pay award of one year would total an additional $75,000 plus bonus. (Green

1  Decl. ¶ 4.)  Consequentially, a reasonable estimate of Plaintiff's potential award of
2  back and future pay totals alone would satisfy the amount in controversy
3  requirement.
4       21.   In addition to lost wages and other economic damages, Plaintiff alleges
5  that she suffers from "emotional distress" and "general damages."  (Complaint
6  ¶¶ 43, 54, 65, 85, 93, 103, 112, 122, 130, 135, 144, 153, 167, 172, 179 and Prayer
7  for Relief.)  In determining whether the jurisdictional minimum is met, courts
8  consider all recoverable damages, including emotional distress damages.  See *Hunt*
9  *v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347-348 (1977); *Galt*
10 *G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1155-56 (9th Cir. 1998).  Indeed, courts
11 have held that such allegations alone are sufficient to satisfy the amount in
12 controversy requirement.  See *Egan v. Premier Scales & Sys.*, 237 F. Supp. 2d 774,
13 776 (W.D. Ky. 2002) (in an employment case where plaintiff sought damages for
14 embarrassment, humiliation, and willful, malicious and outrageous conduct, the
15 court held that the defendant could "easily make the case that the claims are more
16 likely than not to reach the federal amount in controversy requirement"); *Vasquez v.*
17 *Arvato Digit. Servs.*, LLC, 2011 WL 2560261, 2011 U.S. Dist. LEXIS 69154 at
18 **10-11 (C.D. Cal. June 27, 2011) (citing *Espinoza v. County of Orange*, Case No.
19 30200800110643, 2009 WL 6323832 at *1 (Cal. Super. Ct. Oct. 8, 2009) where an
20 Orange County jury awarded the plaintiff $500,000 in emotional distress damages
21 against his employer); *Iwekaogwu v. City of Los Angeles*, 75 Cal.App.4th 803, 820-
22 821 (1999) (affirming judgment, including jury award of $450,000 in emotional
23 distress damages for violations of the Fair Employment and Housing Act).  see also
24 *Campbell v. National Passenger Railroad Corp.*, 2009 WL 692094 (N.D. Cal., Mar.
25 3, 2009) (awarding $120,000 in non-economic damages in single plaintiff wrongful
26 termination/retaliation case).  Accordingly, although Defendants deny that Plaintiff
27 suffered emotional distress, if she were to prevail and establish such injuries, her
28 damages for emotional distress alone could well exceed the jurisdictional minimum.

22. Plaintiff also requests an unspecified amount of punitive damages. (Complaint ¶¶ 47, 58, 69, 89, 97, 107, 116, 124, 132, 140, 148, 157, 164, 176, 183, and Prayer for Relief.) In addition to compensatory damages, Plaintiff's claims for punitive damages are part of the amount in controversy when determining diversity jurisdiction. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945-946 (9th Cir. 2001). California juries have returned verdicts with substantial punitive damage awards in employment actions. See *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (SD. Iowa 1994) ("Because the purpose of punitive damages is to capture the defendant's attention and deter others from similar conduct, it is apparent that the plaintiff's claim for punitive damages alone might exceed [the jurisdictional amount]."); see also *Simmons*, 209 F. Supp. 2d at 1033-34 (finding it proper to consider evidence from various jury verdicts to establish amount in controversy). For example, in *John Quemada v. Cordoba Corporation,* 2019 Jury Verdicts LEXIS 125719, the plaintiff claimed his employer would not accommodate him. He claimed that he attempted to call the director of human resources, but she never returned his messages. He then filed a lawsuit alleging failure to engage in the interactive process, failure to accommodate, disability/age discrimination, failure to prevent discrimination, and wrongful termination in violation of public policy. The jury awarded plaintiff $1.5 million in punitive damages. (See Defendants' Request for Judicial Notice ("RJN"), Exhibit A.) Likewise, in *Wilma Ismen v. Beverly Hospital*, 2008 Jury Verdicts LEXIS 29753, the plaintiff filed a lawsuit alleging discrimination, retaliation, and failure to accommodate. The jury awarded plaintiff $825,000 in punitive damages. (See RJN, Exhibit B.) Accordingly, Plaintiff's request for punitive damages alone also presents an amount in controversy in excess of the jurisdictional minimum.

23. Plaintiff also seeks payment of her attorney's fees. The Ninth Circuit has affirmed numerous six-figure attorney fee awards in FEHA cases. See, e.g., *Muniz v. UPS*, 738 F.3d 214, 225 (9th Cir. 2013) ($696,162.78 in attorneys' fees);

1  *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1473, 1480 (9th Cir.
2  1995) ($724,380 in attorneys' fees); *Fair Hous. v. Combs*, 285 F.3d 899, 902 (9th
3  Cir. 2002) ($508,606.78 in attorneys' fees). Attorneys' fees, including future
4  attorneys' fees, must be included in the amount in controversy. *Dias v. Burberry*
5  *Ltd.*, No. 21-cv- 192-MMA (JLB), 2021 WL 2349730, 2021 U.S. Dist. LEXIS
6  108200 * 25 (S.D. Cal. June 8, 2021) (citing *Fritsch v. Swift Transportation Co. of*
7  *Ariz.*, LLC, 889 F.3d 785, 788, 793-94 (9th Cir. 2018)). Plaintiff's claims under the
8  Fair Employment and Housing Act provide Plaintiff with her attorneys' fees and
9  costs. Government Code Section 12965(b), attorneys' fees for cases brought under
10 California's Fair Employment and Housing Act are authorized. See *Richmond v.*
11 *Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (in determining the
12 amount of controversy, attorneys' fees are included "if recoverable by statute or
13 contract.") See *Reyes v. Staples Office Superstore*, LLC, 2019 WL 4187847, 2019
14 U.S. Dist. LEXIS 150735, at *13-14 (C.D. Cal. Sept. 3, 2019) (estimating amount
15 of attorneys' fees in controversy based on the plaintiff's attorney's admission of his
16 hourly rate, together with the court's knowledge of customary rates, and that
17 employment cases in the Central District tend to take between 100 and 300 hours to
18 litigate through trial); *Sasso*
19 *v. Noble Utah Long Beach, LLC*, 2015 U.S. Dist. LEXIS 25921, at *12 (C.D. Cal.
20 Mar. 3, 2015) (concluding that an estimated $30,000 [100 hours x $300 per hour] in
21 attorneys' fees was an appropriate and conservative estimate in a disability
22 discrimination case).) Conservatively assuming that Plaintiff's counsel charges
23 $350 per hour, attorneys' fees would total $87,500 after 250 hours of work. Even
24 assuming the most conservative figure of 100 hours, at $350 per hour, Plaintiff's
25 alleged entitlement to attorneys' fees places at least $35,000 in controversy
26 through this damages component. (Declaration of Alexander Harwin, ¶ 6).
27 / / /
28 / / /

1  24. Despite the fact that no specific amount of damages is demanded in Plaintiff's Complaint, the preponderance of the evidence based on the form of the foregoing allegations establishes that the amount in controversy in this instant action exceeds the amount specified by 28 U.S.C. section 1332(a).  See 28 U.S.C. § 1446(c)(2).

25. In sum, although Defendant does not concede Plaintiff's claims possess any merit, Plaintiff's Complaint makes certain that the amount in controversy for Plaintiff's claims more likely than not exceeds the $75,000 jurisdiction requirement, exclusive of interest and costs.  Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship jurisdiction under 28 United States Code Section 1332(a)(1).

**THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED**

26. In accordance with 28 U.S.C. Section 1446(a), Exhibits 1, 2, and 3 constitute a copy of all processes, pleadings, and order served upon Defendant in the State Court Action.  (Harwin Dec. ¶¶ 2, 3, 4, 5.)

27. Defendant will promptly give Plaintiff written notice of the filing of this Notice of Removal and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court for the County of Los Angeles, wherein the action is currently pending, as required by 28 U.S.C Section 1446(d).  (Harwin Dec. ¶ 7.)

28. If any questions arise as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

WHEREFORE, Defendant respectfully requests that this action be removed from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of California, Western Division.

DATED: February 27, 2024

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Alexander J. Harwin*
ALEXANDER J. HARWIN
Attorneys for Defendant, Amplity, Inc.